Marcia M. Meade
DAWSON & MEADE
1310 W. Dean Avenue
Spokane, WA  99201
Telephone:  (509) 328-4266
Facsimile:   (509) 328-7278

ROBERT F. GREER
Feltman, Gebhardt, Greer & Zeimantz, P.S.
421 W. Riverside, Suite 1400
Spokane, WA  99201
Telephone:  (509) 838-6800
Facsimile:   (509) 744-3436

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MARK A. HOLUM, an individual,<br><br>    Plaintiff,<br><br>v.<br><br>EXTENDICARE HOMES, INC., a corporation; EXTENDICARE HEALTH SERVICES, INC., a corporation; and EXTENDICARE HEALTH FACILITIES, INC., a corporation,<br><br>    Defendants. | No.  CV-08-081-EFS<br><br>PLAINTIFF'S LR 56.1(b) STATEMENT OF FACTS |

PLAINTIFF'S STATEMENT OF FACTS - 1

Plaintiff, by and through his undersigned attorneys, submits the following LR 56.1(b) Statement of Facts.

1. Plaintiff MARK HOLUM was and is a Registered Nurse in the State of Washington. (Declaration of Mark Holum at p. 2, ¶3.)

2. On November 30, 2004, Plaintiff was employed by Defendant Extendicare Homes, Inc. at a facility known as the "Gardens". (Declaration of Mark Holum at p. 2, ¶4.)

3. On November 17, 2004, T. H., a developmentally delayed 37-year-old male was admitted to the Gardens where Mark Holum was employed. (Declaration of Sue Goodrick at p. 2, ¶3). T. H. was admitted with a diagnosis of Developmental Delays, Bipolar Disorder (manic-depression), Depression and Anxiety, recurrent aspiration pneumonia, cerebral palsy, and recent gastrotomy tube placement (Declaration of Sincerie Arnold, at p.2, ¶4; Declaration of Sue Goodrick at pp. 2-3, ¶7).

4. Before T. H. was admitted, the Director of Administration for Extendicare, Greg Calvert, and the Director of Nursing for the Gardens were advised repeatedly by nursing staff that residents with mental illnesses were not

PLAINTIFF'S STATEMENT OF FACTS - 2

FELTMAN, GEBHARDT, GREER & ZEIMANTZ, P.S.
*Attorneys at Law*
1400 PAULSEN CENTER - 421 W. RIVERSIDE AVENUE
SPOKANE, WASHINGTON 99201-0495
509-838-6800; FACSIMILE: 509-744-3436

suitable residents at the Gardens for multiple professional reasons. (Declaration of Sincerie Arnold, at pp. 3-4, ¶11.)

5. Before T.H. was admitted the Extendicare Administration was specifically told of T. H.'s assaultive behavior and the inability of a group home staff to control his behavior. (Declaration of Michelle Rashka, p. 4 ¶13.)

6. The nursing staff of the Gardens was not trained in providing care to mentally ill individuals. The Gardens' nursing staff did not have the training in psychiatric nursing to provide day-to-day care to individuals who had dual diagnoses of mental retardation and mental illness. (Declaration of Sincerie Arnold, at p. 4, ¶12; ¶13.)

7. Whenever the staff of the Gardens expressed concerns about being able to provide care to patients with mental illnesses, including, but not limited to, addressing the safety of other residents and staff, the Extendicare administration made it clear that it was in their economic interest to fill the facility's beds with residents no matter what the risk to the other residents and staff. (Declaration of Sincerie Arnold, at pp. 5-6, ¶18; also, Declaration of Michelle Rashka, p. 4, ¶13.)

8. T. H. was an individual with the dual admission diagnosis of mental retardation and mental illness. The Extendicare administration knew that T. H.

PLAINTIFF'S STATEMENT OF FACTS - 3

FELTMAN, GEBHARDT, GREER & ZEIMANTZ, P.S.
Attorneys at Law
1400 PAULSEN CENTER - 421 W. RIVERSIDE AVENUE
SPOKANE, WASHINGTON 99201-0495
509-838-6800; FACSIMILE: 509-744-3436

had both mental retardation and mental illness before he was admitted to the Gardens on November 17, 2004, and when he was allowed back from the Sacred Heart Emergency Room on November 29, 2004. (Declaration of Sincerie Arnold, at p. 6, ¶22.) T.H. was a greater problem because of his dual diagnosis of mental retardation and mental illness. (Declaration of Sincerie Arnold at p. 7 ¶ 24.)

9. According to an Extendicare policy and procedure the dual diagnosis of mental retardation and mental illness were matters that required specific consideration as to whether the safety of other residents and the staff was assured. (Declaration of Sincerie Arnold Ex. P-1 at p. 25, 27) Extendicare recognized it had a "responsibility to ensure that proper care is provided", *e.g.,* presumably nurses with psychiatric training, education and skill in managing patients with mental illness that would implicate concerns for the safety of other residents and staff. (Declaration of Sincerie Arnold, at p. 8-9 ¶26(c), p. 6 ¶22, Ex. P-1.)

10. The yellow flag (light) considerations of the Extendicare were required to be addressed before T. H.'s admission and certainly before he was allowed to remain in The Gardens on November 29th. (Declaration of Sincerie Arnold pp. 7-8, ¶26, ¶27.

PLAINTIFF'S STATEMENT OF FACTS - 4

FELTMAN, GEBHARDT, GREER & ZEIMANTZ, P.S.
*Attorneys at Law*
1400 PAULSEN CENTER - 421 W. RIVERSIDE AVENUE
SPOKANE, WASHINGTON 99201-0495
509-838-6800; FACSIMILE: 509-744-3436

11.    By November 26, 2004, and again on November 29, 2004, the Gardens neither had trained staff nor sufficient staff to provide safe and adequate care to T. H. who was both mentally retarded and mentally ill.  The Gardens had a history of safety problems with prior residents who were mentally ill or improperly allowed to be residents at the Gardens.  (Declaration of Sincerie Arnold, at p. 7, ¶24, p. 14 ¶45, and also Declaration of Mark A. Holum, p. 2, ¶5.)

12.    Days before November 29, 2004, the Extendicare administrative director knew that because of the verbal and written concerns that he had received from nurses and staff at the Gardens, that T. H. was uncontrollable by the staff at the Gardens.  (Declaration of Sincerie Arnold, at p. 7, ¶25, p. 45, and also Declaration of Michelle Rashka, p. 4 ¶13 and also p. 2 ¶7, p. 3 ¶¶8-9.)

13.    The administration at the Gardens knew that T. H. was a known danger to other residents and staff because the administration had been advised of nursing staff's specific concerns about T. H. as a resident.  (Declaration of Sincerie Arnold, at p. 11, ¶34, p. 14¶45; Declaration of Sue Goodrick, p. 4 ¶12; p. 6 ¶12; Declaration of Michelle Rashka, p. 4 ¶13 and also p. 2 ¶7, p. 3 ¶¶8-9.)

14.    On November 29, 2004, T. H. should not have been allowed to return to the Gardens from Sacred Heart Medical Center when staff had been physically

PLAINTIFF'S STATEMENT OF FACTS - 5

assaulted by T. H. who was mentally retarded and mentally ill. Given T. H.'s respiratory status with excessive respiratory secretions, which lowered his oxygen levels, further compromising T. H.'s already severely compromised mental functioning and state, he should not have been allowed back into the Gardens on November 29, 2004. (Declaration of Sincerie Arnold, at p. 11, ¶35; and Declaration of Sue Goodrick at p. 4 ¶12, p. 5 ¶16, ¶18, p. 6 ¶19, ¶20.)

15. Nurse Sincerie Arnold specifically stated in her Declaration that Greg Calvert's testimony "the progress notes of Mr. T. H.'s' care from his admittance on November 17, 2004 to November 29, 2004, showed no incidents of violence, or psychotic episodes" are untrue. (Declaration of Sincerie Arnold, at p. 14, ¶42.) Before T. H. was admitted, Michelle Rashka, CNA, warned the Extendicare Administration that T. H. was violent and had assaulted the staff of the prior Group Home, *e.g.*, "T. H. was tackling and push the staff up against or across the furniture in the home". (Declaration of Michelle Rashka, p. 3 ¶8, p. 4 ¶13.

16. Additionally, Nurse Sincerie Arnold identified where T. H.'s records specifically identified that T. H. was mentally deteriorating because of the over-stimulation of the Extendicare nursing home environment. (Declaration of Sincerie Arnold at p. 9-10, ¶30, ¶31, Ex P-2 at pp. 28, 29, 31. The deterioration of

PLAINTIFF'S STATEMENT OF FACTS - 6

FELTMAN, GEBHARDT, GREER & ZEIMANTZ, P.S.
*Attorneys at Law*
1400 PAULSEN CENTER - 421 W. RIVERSIDE AVENUE
SPOKANE, WASHINGTON 99201-0495
509-838-6800; FACSIMILE: 509-744-3436

T.H. was noted in the Medicare Certification of funding assessment tool (MDS). (Declaration of Sincerie Arnold at p. 10 ¶ 31. Before November 29, the Administration was notified at multiple times and by multiple means that T.H. was a danger to the residents and staff. (Declaration of Sincerie Arnold at p. 7 ¶ 23, ¶ 24).

17. T. H. assaulted a member of the kitchen staff at the Gardens who was attempting to provide one-on-one care to T. H. before November 26, 2004. (Declaration of Sincerie Arnold, at p. 14, ¶43.)

18. The Director of Nursing and the Administrative Director at the Gardens were advised of T. H.'s pre-November 26th assault. (Declaration of Sincerie Arnold, at p. 14, ¶44.)

19. On multiple occasions before November 29, 2004, the Director of Nursing and the Administrative Director at the Gardens were told that T. H. was going to hurt someone and that T. H. needed to be removed from the Gardens facility before someone was seriously hurt. (Declaration of Sue Goodrick, pp. 5-6 ¶18.) The warnings to the administration at the Gardens were supported by the fact that the Gardens neither had sufficient staff nor trained staff to deal with a patient such as T. H. who was both mentally retarded and had mental illness.

PLAINTIFF'S STATEMENT OF FACTS - 7

FELTMAN, GEBHARDT, GREER & ZEIMANTZ, P.S.
*Attorneys at Law*
1400 PAULSEN CENTER - 421 W. RIVERSIDE AVENUE
SPOKANE, WASHINGTON 99201-0495
509-838-6800; FACSIMILE: 509-744-3436

(Declaration of Sincerie Arnold, at p. 12 ¶37, ¶38, p. 14, ¶45.) From November 28, 2004, to the morning of November 29, 2004, T. H. mentally deteriorated to the point that he was manifesting psychotic behavior by increasing demands for attention, agitation, constant verbalization and movements. T. H. had been up for 48 hours which was an indication that T. H. was in a manic phase of his bipolar mental illness and was psychotic. (Declaration of Sincerie Arnold, at p. 15, ¶48.) T.H. had deteriorated to the point that Extendicare staff could no longer control T. H.'s behavior. (Declaration of Sue Goodrick at p. 3, ¶8).

20. On the morning of November 29, 2004, T. H. had deterioration in his respiratory status and had increased oral secretion. (Declaration of Sue Goodrick at p. 3 ¶8) As such, staff at the Gardens was facing more danger because T. H. had to be suctioned more frequently to keep him from developing pneumonia. (Declaration of Sincerie Arnold, at p. 16, ¶50.) T. H. probably had deliriums because of his compromised respiratory status. (Declaration of Sue Goodrick at p. 5, ¶18.) By November 29, T. H. had deteriorated to a psychotic state that presented a danger to the safety of the other residents and staff. (Declaration of Sincerie Arnold, p. 15 ¶21.)

FELTMAN, GEBHARDT, GREER & ZEIMANTZ, P.S.
*Attorneys at Law*
1400 PAULSEN CENTER - 421 W. RIVERSIDE AVENUE
SPOKANE, WASHINGTON 99201-0495
509-838-6800; FACSIMILE: 509-744-3436

21. On the morning of November 29, 2004, T. H. was taken by ambulance to the Emergency Room at Sacred Heart Medical Center for both increased respiratory secretions and increasing behavior. (Declaration of Sincerie Arnold, at p. 16, ¶52, Ex. P-2 p. 21 ; Declaration of Sue Goodrick at p. 3, ¶8, ¶9).

22. The Emergency Department notes from Sacred Heart Medical Center on November 29, 2004, showed that T. H. had to be restrained in a Posey belt to control him in the Emergency Room. (Declaration of Sincerie Arnold, at p. 17, ¶53; Ex. P-5 at p. 45; Declaration of Sue Goodrick, p. 5 ¶16.)

23. Under federal and state law, a residential facility such as the Gardens cannot take a resident into the facility and immediately place a resident in a physical restraint, such as a Posey belt. (Declaration of Sincerie Arnold, at p. 17, ¶54[1];.)

24. The Extendicare Administrative Director knew that the Gardens could not lawfully, immediately, and continuously confine T. H. by use of a Posey restraint on November 29, 2004. In this regard, the Extendicare administration

---

[1] Under the federal regulations of nursing homes and skilled nursing facilities, residents had the right to be free from any physical or chemical restraints imposed for discipline or conveniences, and not required to treat resident's

PLAINTIFF'S STATEMENT OF FACTS - 9

knew that T. H. could not be discharged from Sacred Heart Medical Center and then be immediately placed in a Posey restraint at the Gardens in order to prevent him from injuring residents and staff. (Declaration of Sincerie Arnold, at pp. 17-18, ¶56;.)

25. On November 29, 2004, the nursing assessment at the Gardens concluded that T. H. had previously assaulted an untrained kitchen staff trying to work with T. H. on a one-on-one basis and by November 29, 2004, T. H. could no longer be controlled by the nursing staff. The nursing assessment was that T. H. had to be removed from the Gardens because he was going to harm another person. (Declaration of Sue Goodrick, p. 5-6 ¶18; Declaration of Sincerie Arnold, p. 12 ¶38, p. 14 ¶45.) The nursing assessment showed that the Gardens had neither the resources nor the staff to stop T. H. from assaulting others. (Declaration of Sincerie Arnold, at p. 18, ¶57 and also p. 12 ¶37.)

26. T. H. received no treatment at Sacred Heart Medical Center on November 29, 2004 for his dangerous and unmanageable behavior. (Declaration of Sue Goodrick at p. 5 ¶18). On November 29th, the Acting Administrative

---

medical symptoms. *E.g.,* 42 CFR ¶483.13 F-Tag 221. Placing physical restraints on T. H. would not be treatment of Bipolar psychosis or his mental retardation.

PLAINTIFF'S STATEMENT OF FACTS - 10

FELTMAN, GEBHARDT, GREER & ZEIMANTZ, P.S.
*Attorneys at Law*
1400 PAULSEN CENTER - 421 W. RIVERSIDE AVENUE
SPOKANE, WASHINGTON 99201-0495
509-838-6800; FACSIMILE: 509-744-3436

Director of the Gardens had the authority to tell the hospital that T.H. could not be returned to the Gardens. (Declaration of Sue Goodrick at p. 5 ¶17.)

27.   On November 29, 2004, the nursing staff told the Director of Nursing and Administrative Director at the Gardens that T. H. was not a suitable resident for the Gardens and that T. H. was going to harm others. (Declaration of Sincerie Arnold, at p. 18, ¶58; and also Declaration of Sue Goodrick at p. 4 ¶¶11, 12.) After T.H. returned Nurse Goodrick made multiple attempts to get a Mental Health Professional to come to the Gardens to declare T.H. psychotic, so he would be removed by law to another facility. (Declaration Sue Goodrick at p. 4-5 ¶ 15, Ex. P-6 at p. 16. Declaration of Sincerie Arnold Ex. P-4 at p. 41)

28.   Nurse Sue Goodrick notified the Administrative Director and notified the Director of Nursing of the out-of-control behavior of T. H. and that, based upon the nursing assessments, T. H. was going to hurt himself or others. (Declaration of Sue Goodrick at p. 4, ¶12).

29.   On November 29, 2004, after the Director of Nursing and Administrative Director allowed T. H. back into the Gardens from Sacred Heart Medical Center, T. H. engaged in multiple physical assaults on the staff. T. H. was observed and documented to be in a psychotic state at 4:30 p.m. and 6:45 p.m.

PLAINTIFF'S STATEMENT OF FACTS - 11

during the evening shift on November 29th. (Declaration of Sincerie Arnold, at p. 18, ¶59.) The night of November 29 into the early morning of November 30, after being up for more than 48 hours, T.H. slept. (Declaration of Sincerie Arnold Ex. P-2 at p 39.)

30. T. H. should have been removed from the Gardens on November 29, 2004, when he began assaulting others. A psychotic ambulatory, mentally retarded 37-year-old male in a residential extended care facility such as the Gardens will harm others. (Declaration of Sincerie Arnold, at pp. 18-19, ¶60, ¶61; and also Declaration of Sue Goodrick at p. 6 ¶19, 20.)

31. The administration at Extendicare intended to completely disregard the safety of other residents and staff because the only response they made to repeated professional concerns by staff regarding the admission and discharge of mentally ill residents was to either "shut-up" or the "concerned" staff would be out of a job. (Declaration of Sincerie Arnold, at p. 19, ¶63, ¶64; and also Declaration of Michelle Rashka p. 4 ¶ 13.)

32. It was certain that T. H. would become violent and would in fact assault other people at the time he was readmitted to the Gardens on November 29, 2004. (Declaration of Sue Goodrick at p. 6, ¶19)

PLAINTIFF'S STATEMENT OF FACTS - 12

FELTMAN, GEBHARDT, GREER & ZEIMANTZ, P.S.
*Attorneys at Law*
1400 PAULSEN CENTER - 421 W. RIVERSIDE AVENUE
SPOKANE, WASHINGTON 99201-0495
509-838-6800; FACSIMILE: 509-744-3436

33. T. H. was readmitted to the Gardens on November 29, 2004. No changes were made to his care, so T. H. continued to be a danger to others. (Declaration of Sue Goodrick at pp. 5-6, ¶18)

34. On November 30, 2004, before 9:00 a.m. T. H. violently assaulted Plaintiff MARK HOLUM as Mr. Holum. As a result of this violent attack, Plaintiff MARK HOLUM was severely injured. (Declaration of Mark Holum at pp. 4-5 ¶12, ¶13, ¶14, ¶15. (Declaration of Sincerie Arnold Ex P-2 p. 37 notation to transport signed at 9:10 a.m.)

35. In less than an hour of the November 30, 2004, assault, T.H. was discharged from the Gardens. (Declaration of Sincerie Arnold Ex. P-2 pp. 37, 39.)

DATED this 9th day of January, 2009.

DAWSON & MEADE

By: /s/ Marcia M. Meade
MARCIA M. MEADE, WSBA# 11122
Co-Counsel for Plaintiff

FELTMAN, GEBHARDT,
GREER & ZEIMANTZ, P.S.

By: /s/ Robert F. Greer
ROBERT F. GREER, WSBA# 15619
Co-Counsel for Plaintiff

PLAINTIFF'S STATEMENT OF FACTS - 13

## CERTIFICATE OF SERVICE

I, Karen S. Brasefield, am a citizen of the United States and a resident of the State of Washington; I am over the age of eighteen (18) years; I am competent to be a witness in a court of law, and I am not a party to the within action.

The undersigned certifies under penalty of perjury under the laws of the State of Washington, that on the 9TH day of January, 2009, the foregoing document was delivered to the following person(s) in the manner indicated:

Patrick J. Cronin                          [ ] US Mail
WINSTON & CASHATT                          [ ] Hand Delivery
601 W. Riverside Avenue, Suite 1900        [ ] Overnight Mail
Spokane, WA  99201                         [ ] Facsimile
Facsimile: (509) 838-1416                  [x] Via CM/ECF
Email address: pjc@winstoncashatt.com

Lucinda S. Whaley                          [ ] US Mail
WINSTON & CASHATT                          [ ] Hand Delivery
601 W. Riverside Avenue, Suite 1900        [ ] Overnight Mail
Spokane, WA  99201                         [ ] Facsimile
Facsimile: (509) 838-1416                  [x] Via CM/ECF
Email address: lsw@winstoncashatt.com

Marcia M. Meade                            [ ] US Mail
DAWSON & MEADE                             [ ] Hand Delivery
1310 W. Dean Avenue                        [ ] Overnight Mail
Spokane, WA  99201                         [ ] Facsimile
Facsimile:   (509) 328-7278                [x] Via CM/ECF
Email address: m@d-mlaw.com

*/s/ Karen S. Brasefield*
KAREN S. BRASEFIELD

PLAINTIFF'S STATEMENT OF FACTS - 14